UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
UNITED STATES OF AMERICA,            :
                                     :
            -v-                      :         09 Cr. 109 (JSR)
                                     :
EDILBERTO BERRIOS ORTIZ,             :         MEMORANDUM
                                     :
            Defendant.               :
------------------------------------- x

JED S. RAKOFF, U.S.D.J.

On May 12, 2009, the Government filed a Sixth Superseding Indictment ("Indictment") against defendant Edilberto Berrio Ortiz (a/k/a "El Gavilan") and eight alleged co-conspirators. The Indictment charges the defendants with conspiring to take hostages in violation of 18 U.S.C. § 1203 (Count One) and taking hostages in violation of 18 U.S.C. § 1203 and 2 (Count Two). Indict. ¶¶ 1-4. On December 22, 2010, defendant Ortiz filed a motion to suppress identification evidence, and the Government submitted a memorandum in opposition on December 31, 2010. On January 3, 2011, after careful consideration of both submissions, the Court issued an Order denying the motion as a matter of law. This Memorandum explains the reasons for that decision.

Both Counts of the Indictment arise from the April 4, 2008 kidnapping of the "Victim," an American citizen living in Panama, by the 57th Front of the Fuerzas Aramadas Revolucionarias de Colombia (the "FARC"). Government's Memorandum of Law in Response to the Defendant's Motion to Suppress Identification Evidence ("Gov. Mem.") at 2. The Indictment charges that Ortiz and two co-defendants,

Alejandro Palacios Rengifo (a/k/a "El Gato") and Anderson Champuro Dogirama (a/k/a "El Tigre"), guarded the Victim from April 6, 2008 until February 10, 2009. Indict. ¶ 3(f). According to the Government, the Victim was released on February 20, 2009 after his family paid a large ransom. Gov. Mem. at 4. The Victim described his captors to the FBI after his release, noting that the guard known as "El Gavilan" was missing a thumb on his right hand. Id. at 4-5. Shortly thereafter, the FBI "became aware of three male and one female FARC deserters - one of whom was missing his right thumb - that had been arrested in Panama and transferred to Colombian custody." Id. at 5. On March 13, 2009, the Government presented the Victim with a photo array consisting of 20 photographs, and the Victim identified the photo of defendant Ortiz as "El Gavilan," the photo of defendant Rengifo as "El Gato," and the photo of defendant Dogirama as "El Tigre." Id. The Government sought the extradition of these defendants, and Ortiz arrived in the Southern District of New York on November 12, 2010.

Identification evidence "will be admissible if (a) the procedures were not suggestive or (b) the identification has independent reliability." Abdur Raheem v. Kelly, 257 F.3d 122, 134 (2d Cir. 2001). Ortiz moves to suppress the Victim's identification evidence on the ground that the identification procedures were "unduly suggestive." See United States v. Thai, 29 F.3d 785, 808 (2d

Cir. 1994). He first argues that the photo array is itself suggestive; he contends that Ortiz is a "young male with short hair, a thin mustache and a dark brown complexion," and that only two other photographs in the array depict individuals matching this description. Memorandum of Law in Support of Pretrial Motions for Defendant Edilberto Berrios Ortiz ("Def. Mem.") at 6. Moreover, those two individuals are also defendants in the case. Id. Ortiz therefore argues that the "identification procedure was tainted." Id. He also contends that the "identification procedure did not generate a single report." Accordingly, he argues that the Court must either suppress the identification evidence or conduct an evidentiary hearing regarding the identification procedures.

The Court finds these arguments without merit. As an initial matter, the Government has provided an identification report. See Gov. Mem. Exhibit B. As to the photo array (attached to the Government's memorandum as Exhibit A), the Court finds that it is not suggestive. The array consists of twenty black-and-white photographs depicting thirteen men and seven women. Although Ortiz contends that including women in the array was improper, see Def. Mem. at 6, the Government's decision to do so makes sense in light of the fact that it was seeking to locate three male and one female FARC deserters. Gov. Mem. at 5. But in any event, the array includes thirteen males of generally similar appearance -- all young men with short hair and

3

dark complexions.  Only the faces are visible, so Ortiz cannot argue that his unique feature of a missing thumb played a role in the identification.  All of the photographs are roughly the same size, the individuals depicted therein display generally similar expressions, and there is nothing else apparent on the face of the photographs to indicate that any one image stands out from the rest.  Moreover, although Ortiz points out that only three of the individuals have mustaches, the Victim indicated that Ortiz did not have a mustache during the period Ortiz served as the Victim's guard.  Gov. Mem. at 16; Exhibit B.  Thus, the Victim identified Ortiz despite the fact that he is pictured with a mustache, not because of the fact that he was only one of three individuals so depicted.  Finally, the fact that the pictures of two co-defendants were included in the array is irrelevant, especially as the Victim correctly identified each of them by name.  Id. at 5, 16.

As the Court thus finds that the identification procedures were not suggestive, "no further inquiry by the court is required." Abdur Raheem, 257 F.3d at 133.  Nonetheless, the Court also notes that the identification is independently reliable because the Victim had the opportunity to closely observe Ortiz for a period of more than ten months.  See United States v. Bubar, 567 F.2d 192, 197 (2d Cir. 1977) (identifications reliable if "supported by an independent basis in memory"); see also Manson v. Brathwaite, 432 U.S. 98, 114

(1977) ("reliability is the linchpin in determining the admissibility of identification testimony"). Any further questions concerning the credibility of the Victim's testimony are properly left to the jury to determine at trial. See Foster v. California, 394 U.S. 440, 442 n.2 (1969) ("The reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury."). The Court therefore reaffirms its January 3, 2011 Order denying Ortiz's motion as a matter of law.

                                               _____
                                               JED S. RAKOFF, U.S.D.J.

Dated:  New York, New York
         January 10, 2011

5